Will Thompson (Cal. Bar No. 289012)
wthompson@burnscharest.com
Warren Burns (*pro hac vice* to be filed)
wburns@burnscharest.com
Daniel H. Charest (*pro hac vice* to be filed)
dcharest@burnscharest.com
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002

Korey A. Nelson (*pro hac vice* to be filed)
knelson@burnscharest.com
Lydia A. Wright (*pro hac vice* to be filed)
lwright@burnscharest.com
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765

R. Andrew Free (*pro hac vice* to be filed)
andrew@immigrantcivilrights.com
Matthew Freda (*pro hac vice* to be filed)
matt@immigrantcivilrights.com
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221
Facsimile: (615) 829-8959

Nicole Ramos (*pro hac vice* to be filed)
nicole@alotrolado.org
**AL OTRO LADO**
511 E. San Ysidro Blvd., # 333
San Ysidro, CA 92173
Telephone: (619) 786-4866

Robert R. Ahdoot (Cal. Bar No. 172098)
rahdoot@ahdootwolfson.com
**AHDOOT & WOLFSON, APC**
8424 Santa Monica Blvd., Ste. 575
West Hollywood, CA 90069
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

***Attorneys for Plaintiffs.***

1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CARLOS GONZALEZ,** **JUAN JOSE MERINO-RODAS,** **MARIBEL GUTIERREZ-CANCHOLA,** **GLADYS CARRERA-DUARTE,** and **JENNYE PAGOADA-LOPEZ,** individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> **CORECIVIC, INC.,** <br><br> Defendant. | Civil Action No. **'17 CV 2573 AJB NLS** <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES** <br><br> **CLASS ACTION** |

**PRELIMINARY STATEMENT**

1. This action arises from systematic and unlawful wage theft, unjust enrichment, and forced labor at California's Otay Mesa Detention Center (the "Otay Mesa Facility" or the "Facility").

2. The Otay Mesa Facility is a civil immigration detention facility owned and operated for profit by Defendant CoreCivic, Inc. ("CoreCivic").

3. CoreCivic is a multibillion-dollar corporation that owns and operates detention facilities across the United States. CoreCivic has made hundreds of millions of dollars in profits from its contract to run the Otay Mesa Facility.

4. Although it is contractually required to provide for all essential detention services at the Facility, CoreCivic uses the free and nearly-free labor of detainees to perform these services to maximize profits.

5. CoreCivic pays detainees $1 or $1.50 per day – or nothing at all – to maintain and operate the Facility.

6.      This labor is not voluntary in any meaningful sense. CoreCivic maintains a corporate policy and uniform practice at the Otay Mesa Facility of withholding necessary protection, care, and services from its detainees to ensure a ready supply of available labor needed to operate the Facility.

7.      As a result, detainees are forced to submit to CoreCivic's unlawful detainee labor scheme to buy the basic necessities – including food, water, warm clothing, medicine, and hygiene products – that CoreCivic unlawfully refuses to provide for them.

8.      CoreCivic maintains a corporate policy and uniform practice at the Otay Mesa Facility of threatening detainees who refuse to work with solitary confinement, cutting off communication and visitation with family, reporting their actions to the United States Immigration and Customs Enforcement ("ICE"), or referring them for criminal prosecution. Together with CoreCivic's systemic under-provision for detainee needs, these abusive practices and threats of abuse ensure that detainees will continue working for subminimum wages, or for nothing at all.

9.      CoreCivic's scheme significantly reduces its labor costs and expenses, and exponentially increases its already vast profits, by unlawfully forcing and coercing detainees to perform labor at subminimum wages or for free.  These policies and practices violate California minimum wage law, the California Unfair Competition Law, and federal and state Trafficking Victims Protection Acts, which prohibit forced labor.

10.     Plaintiffs Carlos Gonzalez, Juan Jose Merino-Rodas, Maribel Gutierrez-Canchola, Gladys Carrera-Duarte, and Jennye Pagoada-Lopez, individually and on behalf of all others similarly situated, brings this class action lawsuit to stop the economic exploitation of detainees at the Otay Mesa Facility, to recover unpaid wages, and to remedy the unjust enrichment resulting from CoreCivic's unlawful failure to pay its detainee workforce legal wages.

**JURISDICTION AND VENUE**

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Trafficking Victims Protection Act, 18 U.S.C. §§ 1589 *et seq.*

12.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one defendant; there are more than 100 class members; the aggregate amount in controversy exceeds $5,000,000; and minimal diversity exists.

13.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to the claims occurred in this District.

14.     This Court has personal jurisdiction over CoreCivic because the corporation regularly conducts business in California, and has sufficient minimum contacts with California.

15.     Plaintiffs request that this Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over their state law claims arising under the California Minimum Wage Act, the California Unfair Competition Law, and California common law.

## PARTIES

**A.     Plaintiffs**

16.     Plaintiff Carlos Gonzalez is an adult resident of Bakersfield, California. He is a citizen of El Salvador and is seeking asylum in the United States. From May 2017 through November 2017, he was detained at the Otay Mesa Facility. During those months, Mr. Gonzalez was employed by CoreCivic as a kitchen worker, janitor, and administrative clerk. He was paid only $1 or $1.50 per day for his labor – or nothing at all – regardless of how many hours he worked.

17.     Plaintiff Juan Jose Merino-Rodas is an adult resident of Bakersfield, California. He is a citizen of El Salvador and is seeking asylum in the United States. From May 2017 through November 2017, he was detained at the Otay Mesa Facility. During those months, Mr. Merino Rodas was employed by CoreCivic as a kitchen worker and janitor. He was paid only $1 or $1.50 per day for his labor – or nothing at all – regardless of how many hours he worked.

18.    Plaintiff Maribel Gutierrez-Canchola is a current detainee at the Otay Mesa Facility. She is a citizen of Mexico and is seeking asylum in the United States. She has been detained at the Facility since on or around June 17, 2017. Ms. Gutierrez-Canchola is currently employed by CoreCivic as a janitor. She is paid only $1.50 per day for her labor – or nothing at all – regardless of how many hours she works.

19.    Plaintiff Gladys Carrera-Duarte is a current detainee at the Otay Mesa Facility. She is a citizen of Guatemala and is seeking asylum in the United States. She has been detained at the Facility since on or around June 30, 2017. Ms. Carrera-Duarte is currently employed by CoreCivic as a janitor. She is paid only $1.50 per day for her labor – or nothing at all – regardless of how many hours she works.

20.    Plaintiff Jennye Pagoada-Lopez is a current detainee at the Otay Mesa Facility. She is a citizen of Honduras and is seeking asylum in the United States. Ms. Pagoada-Lopez has been detained at the Facility since on or around July 23, 2017. She is employed by CoreCivic as a janitor. She is paid only $1.50 per day for her labor – or nothing at all – regardless of how many hours she worked.

**B.    Defendant**

21.    Defendant CoreCivic, formerly the Corrections Corporation of America, is a for-profit corporation providing correctional and detention services. CoreCivic is a Maryland corporation, with its principal office located at 10 Burton Hills Boulevard, Nashville, Tennessee, 37215.

## FACTUAL ALLEGATIONS

**A.    Immigration detention is civil—not criminal.**

22.    Each year, hundreds of thousands of individuals are detained in geographically isolated immigration detention facilities while awaiting immigration or citizenship status

determinations. These detainees include U.S. citizens, lawful permanent residents (green card holders) with longstanding family and community ties, survivors of torture, asylum seekers, victims of human trafficking, children, and pregnant women.

23.     Some detainees were brought to the United States as children. And thousands ultimately have their United States citizenship or legal residency affirmed by an immigration court or federal judge.

24.     Immigration violations are civil violations, and immigration detention is civil in nature.[1] Many detainees have no criminal history at all.

25.     Notwithstanding immigration detention's civil nature and purpose, detainees are subjected to prison-like conditions at the Otay Mesa Facility. According to Dora Schriro, former head of ICE's Office of Detention Policy and Planning, most detainees are held – systematically and unnecessarily – under circumstances inappropriate for immigration detention's noncriminal purposes.[2]   Detainees are frequently subjected to punitive and long-term solitary confinement, inadequate medical care, sexual and physical assault, lack of access to counsel, and other harsh conditions of confinement, all without a conviction.

26.     Many detainees accede to deportation simply to obtain release from these intolerable conditions, even when they have valid claims to remain in the United States, including claims for asylum or other discretionary relief.

**B.     The privatization of immigration detention and CoreCivic's economic windfall.**

27.     Immigration detention expanded roughly eightfold over the past two decades, from a capacity of 5,532 detention beds in 1994[3] to a current capacity of over 41,000.[4]

---

[1] *See Fong Yue Ting v. United States*, 149 U.S. 698, 728–30 (1893) (observing that deportation proceedings have "all the elements of a civil case" and are "in no proper sense a trial or sentence for a crime or offense").

[2] Dora Schriro, U.S. Dep't of Homeland Sec., "Immigration Detention Overview and Recommendations," at 10, 15 (2009).

[3] Sharita Gruber, "How For-Profit Companies are Driving Immigration Detention Policies, Center for American Progress" (Dec. 18, 2015), *available at*

6

28.     During the same period, CoreCivic and other private prison corporations have spent tens of millions of dollars on lobbying efforts.[5]

29.     As immigration detention has expanded, private prison corporations, particularly CoreCivic, have gained an increasing share of the contracts for new detention beds.[6]

30.     Contracts with ICE accounted for 28% of CoreCivic's total revenues in 2016 ($511.8 million), up from up from 24% in 2015.[7] CoreCivic officials expect these lucrative ICE contracts to account for a significant percentage of the corporation's ongoing revenues.[8]

31.     CoreCivic's 2016 revenues were approximately $1.85 billion, and its stock is publicly traded on the New York Stock Exchange.[9]

32.     CoreCivic's economic windfall, and the profitability of its immigration detention enterprise, arise from its policy of systemically withholding necessary case from detainees to ensure a readily available, captive labor force that cleans, maintains, and operates its facilities for sub-minimal wages under threat of solitary confinement and abuse of legal process. Without this nearly free detainee labor, CoreCivic's windfall from immigrant detention would be substantially decreased.

**C.     CoreCivic withholds necessary care from detainees at the Otay Mesa Facility.**

33.     Since 2005, CoreCivic has contracted with ICE to operate the Otay Mesa Facility, which is a 1,482-bed immigration detention facility in San Diego, California.

34.     The Otay Mesa Facility is notorious for its poor treatment of detainees.

---

https://www.americanprogress.org/issues/immigration/reports/2015/12/18/127769/how-for-profit-companies-are-driving-immigration-detention-policies/.

[4] Jenny Jarvie, "This industry stands to benefit from Trump's crackdown on the border," Los Angeles Times (Feb. 14, 2017) *available at* http://www.latimes.com/nation/la-na-immigrant-detention-20170214-story.html.

[5] Michael Cohen, "How for-profit prisons have become the biggest lobby no one is talking about," Washington Post (Apr. 28, 2015), *available at* https://www.washingtonpost.com/posteverything/wp/2015/04/28/how-for-profit-prisons-have-become-the-biggest-lobby-no-one-is-talking-about/?utm_term=.25de04ae71f9

[6] Bethany Carson & Eleana Diaz, "Payoff: How Congress Ensures Private Prison Profit with an Immigrant Detention Quota, Grassroots Leadership," (Apr. 2015) at 4, Chart 1-A^, *available at* https://grassrootsleadership.org/sites/default/files/reports/quota_report_final_digital.pdf

[7] CoreCivic, Inc., 201610-K form at 10, 36, *available at* https://www.sec.gov/Archives/edgar/data/1070985/000119312517053982/d310578d10k.htm

[8] *Id.* at 56.

[9] *Id.* at 54.

35.     CoreCivic maintains a corporate policy and uniform practice of withholding sufficient protection, food, water, medicine, clothing, and hygiene products from the detainees at the Otay Mesa Facility. As a result, detainees are forced to either purchase these daily necessities from the Facility's commissary, or go without.

36.     By maintaining these harsh conditions and purposely withholding basic necessities from detainees, CoreCivic ensures an available labor pool of detainees will work for only $1 or $1.50 per day, thus allowing it to continue operating the Otay Mesa Facility at an enormous profit.

**D.**     **CoreCivic uses detainees to clean, maintain, and operate the Otay Mesa Facility.**

37.     Through its so-called Voluntary Work Program (the "Work Program"), CoreCivic hires detainees to perform work that directly contributes to institutional operations, at a rate of $1 or $1.50 per day.

38.     Despite its name, the Work Program is not "voluntary" in any meaningful sense. Instead, as noted above, CoreCivic maintains a corporate policy and uniform practice at the Otay Mesa Facility of withholding necessary care and protection from detainees. As a result, detainees are forced to submit to CoreCivic's detainee labor scheme in order to buy necessities – including food, water, medicine, clothing, and hygiene products – that CoreCivic refuses to provide for them.

39.     Further, CoreCivic maintains a corporate policy and uniform practice at the Facility of threatening to place those who refuse to work into solitary confinement. These conditions, policies, and practices ensure that detainees continue working for subminimum wages.

40.     In the Work Program, detainees are required to work according to an assigned work schedule and to participate in work-related training. At all times, CoreCivic controls detainees' wages, hours, and working conditions.

41.     CoreCivic provides all necessary personal protection equipment and work uniforms.

42.     CoreCivic records the hours detainees work and periodically credits wages to their accounts.

8

43.     The detainee workers are "employees," and CoreCivic is an "employer" under California's minimum wage laws.

44.     CoreCivic informs all detainees entering the Otay Mesa Facility that the following work assignments may be available through the Work Program:

      a.   Intake

      b.   Kitchen Worker

      c.   Recreation

      d.   Library

      e.   Barber

      f.   Laundry

      g.   Living area clean-up/janitorial

      h.   Evening workers (facility janitorial)

      i.   Maintenance

45.     In the course of their labor and employment by CoreCivic, detainees employed in the Work Program performed a wide range of work, including but not limited to:

      a.   Scrubbing bathrooms, showers, toilets, and windows;

      b.   Cleaning and maintaining CoreCivic's on-site medical facility;

      c.   Cleaning patient rooms and medical staff offices;

      d.   Sweeping, mopping, stripping, and waxing floors throughout the facility;

      e.   Washing detainee laundry;

      f.   Preparing, cooking, and serving detainee meals;

      g.   Washing dishes;

      h.   Cleaning the kitchen and cafeteria before and after detainee meals;

      i.   Performing clerical work for CoreCivic;

      j.   Running and managing the law library;

k.   Providing barber services to detainees;

l.   Cleaning intake areas and solitary confinement units; and

m.  Cleaning and maintaining recreational areas.

46.     The Work Program allows CoreCivic to avoid recruiting from the traditional labor market, complying with the terms of its union contracts, and paying all costs associated with potential, current, and former employment relationships, thereby reducing operational costs and increasing its own profits.

47.     CoreCivic does not pay and has not paid detainees the state minimum wage – currently, $10.50 per hour – for the hours they worked at the Otay Mesa Facility.

48.     CoreCivic's contract with ICE requires CoreCivic to comply with all federal, state, and local laws.

49.     No clause in CoreCivic's contract with ICE or any rule or standard incorporated by reference into the contract requires CoreCivic to maximize its profits by paying detainees sub-minimum wages.

50.     CoreCivic's pay policies violate California's minimum wage laws.

**PLAINTIFFS' EMPLOYMENT AT THE OTAY MESA FACILITY**

A.      **Plaintiff Carlos Gonzalez**

51.     Mr. Gonzalez is citizen of El Salvador and an asylum seeker in the United States.  He lives with his family in Bakersfield, California.

52.     Mr. Gonzalez was detained at the Otay Mesa Facility from approximately May 7, 2017 to approximately November 30, 2017. He was detained along with his stepson, Plaintiff Juan Jose Merino-Rodas.

53.     Mr. Gonzalez has performed work for CoreCivic at the Otay Mesa Facility and was not paid the state minimum wage for the work he has performed.

54.     As a kitchen worker, Mr. Gonzalez prepared, cooked, and served meals, washed dishes, and cleaned the kitchen area. He worked six-hour shifts, starting at 3:00 am, up to seven days per week. He used cleaning supplies and equipment provided by CoreCivic.

55.     When he was hired to work in the kitchen, Mr. Gonzalez was forced to sign a waiver of his workers' compensation rights.

56.     As a janitor, Mr. Gonzalez cleaned and maintained the intake area of the Facility. He worked three-hour shifts, up to seven days per week. He used cleaning supplies and equipment provided by CoreCivic.

57.     Mr. Gonzalez also worked for three weeks cleaning and maintaining the office of the Facility manager. He worked three-hour shifts, up to seven days per week. He used cleaning supplies and equipment provided by CoreCivic.

58.     Mr. Gonzalez worked in the Facility manager's office because he was promised payment of $1 per day, plus soda and candy bars, in exchange for his labor. However, he never received any payment, soda, or candy bars – or anything else – for his work.

59.     In return for this labor in the kitchen, intake area, and the manager's office, Mr. Gonzalez was paid $1 to $1.50 per day – or nothing at all – regardless of the number of hours he worked. CoreCivic credited these wages to Mr. Gonzalez's commissary account periodically.

60.     Mr. Gonzalez spent his wages on food and vitamins from the Otay Mesa Facility commissary, among other necessities.

61.     Officers at the Otay Mesa Facility threatened to put Mr. Gonzalez in disciplinary segregation, *i.e.*, solitary confinement, revoke his family visitation and commissary access rights, and withhold mail delivery if he stopped working or encouraged other detainees to stop working.

62.     If given a meaningful choice, Mr. Gonzalez would not have worked for less than minimum wage.

11

63.     CoreCivic falsely led Mr. Gonzalez to believe the corporation could not pay him more than $1.50 per day, despite the fact that it does so as a matter of course at several of its other immigration detention facilities.

64.     CoreCivic falsely led Mr. Gonzalez to believe that it could require him to work in the Facility Manager's officer for no pay at all.

65.     CoreCivic falsely led Mr. Gonzalez to believe he had to waive his protections under California's Worker's Compensation laws while working as an employee at the facility.

66.     CoreCivic retained the value of Mr. Gonzalez's labor by realizing this value as corporate profits, rather than using it to provide for safer, more humane living conditions for detainees at the Otay Mesa Facility.

**B.      Plaintiff Juan Jose Merino-Rodas**

67.     Mr. Merino-Rodas is citizen of El Salvador and an asylum seeker in the United States. He lives with his family in Bakersfield, California.

68.     Mr. Merino-Rodas was detained at the Otay Mesa Facility from May 2017 through November 2017.

69.     Mr. Merino-Rodas has performed work for CoreCivic at the Otay Mesa Facility and was not paid the state minimum wage for the work he has performed.

70.     As a kitchen worker, Mr. Merino-Rodas washed dishes, prepared and cooked meals, and cleaned the kitchen area. He worked six-hour shifts, up to seven days per week. He used cleaning supplies and equipment provided by CoreCivic.

71.     While employed by CoreCivic as a kitchen worker, Mr. Merino-Rodas suffered an extremely painful burn to his arm that required medical treatment. CoreCivic denied Mr. Merino-Rodas access to California's Worker's Compensation protections and required him to return to work just one day later—before he fully recovered.

72.     Detainee laborers at the Otay Mesa Facility have, like Mr. Merino-Rodas, suffered on-the-job injuries for which they received inadequate treatment and compensation.

73.     Mr. Merino-Rodas was also employed to clean and maintain the intake area of the Facility. In this role, he worked three-hour shifts, seven days per week. He used cleaning supplies and equipment provided by CoreCivic.

74.     In return for this labor, Mr. Merino-Rodas was paid $1.50 per day, regardless of the number of hours he worked. CoreCivic credited these wages to his commissary account periodically.

75.     Mr. Merino-Rodas spent his wages on food and medicine from the Otay Mesa Facility commissary, among other necessities.

76.     Officers at the Otay Mesa Facility threatened to put Mr. Merino-Rodas in disciplinary segregation, *i.e.*, solitary confinement, if he stopped working or encouraged other detainees to stop working.

77.     If given a meaningful choice, Mr. Merino-Rodas would not have worked for less than the minimum wage.

78.     CoreCivic falsely led Mr. Merino-Rodas to believe the corporation could not pay him more than $1.50 per day, despite the fact that it does so as a matter of course at several of its other immigration detention facilities.

79.     CoreCivic falsely led Mr. Merino-Rodas to believe he had to waive his protections under California's Worker's Compensation laws while working as an employee at the facility.

80.     CoreCivic retained the value of Mr. Merino-Rodas' labor by realizing this value as corporate profits, rather than using it to provide for safer, more humane living conditions for detainees at the Otay Mesa Facility.

**C.      Plaintiff Maribel Gutierrez-Canchola**

81.     Ms. Gutierrez-Canchola is a citizen of Mexico and an asylum seeker in the United States.

82.   Ms. Gutierrez-Canchola is currently detained at the Otay Mesa Facility. She has been detained there since approximately June 17, 2017.

83.   Ms. Gutierrez-Canchola performs work for CoreCivic at the Otay Mesa Facility, and is not paid the state minimum wage for the work she performs.

84.   As a janitor, Ms. Gutierrez-Canchola cleans and maintains bathrooms, showers, kitchens, lobbies, stairwells, offices, and other areas through the Facility. She works up to six hours per day, five days a week.  She uses cleaning supplies and equipment provided by CoreCivic.

85.   In return for this labor, Ms. Gutierrez-Canchola is paid $1.50 per day, regardless of the number of hours she works. CoreCivic credits these wages to Ms. Gutierrez-Canchola's commissary account periodically.

86.   Ms. Gutierrez-Canchola spends her wages on food, medicine, clothing, soap, and shampoo from the Otay Mesa Facility commissary, among other necessities.

87.   If given a meaningful choice, Ms. Gutierrez-Canchola would not work for less than the minimum wage.

88.   CoreCivic falsely led Ms. Gutierrez-Canchola to believe the corporation cannot pay her more than $1.50 per day, despite the fact that it does so as a matter of course at several of its other immigration detention facilities.

89.   CoreCivic has retained and currently retains the value of Ms. Gutierrez-Canchola's labor by realizing this value as corporate profits, rather than using it to provide for safer, more humane living conditions for detainees at the Otay Mesa Facility.

**D.**   **Plaintiff Gladys Carrera-Duarte**

90.   Ms. Carrera-Duarte is a citizen of Guatemala and an asylum seeker in the United States.

91.   Ms. Carrera-Duarte is currently detained at the Otay Mesa Facility. She has been detained there since approximately June 30, 2017.

92.     Ms. Carrera-Duarte performs work for CoreCivic at the Otay Mesa Facility, and is not paid the state minimum wage for the work she performs.

93.     As a janitor, Ms. Carrera-Duarte cleans and maintains bathrooms, showers, kitchens, lobbies, stairwells, offices, and other areas through the Facility. She works up to six hours per day, five days a week.  She uses cleaning supplies and equipment provided by CoreCivic.

94.     In return for this labor, Ms. Carrera-Duarte is paid $1.50 per day, regardless of the number of hours she works. CoreCivic credits these wages to her commissary account periodically.

95.     Ms. Carrera-Duarte spends her wages on food, medicine, clothing, soap, and shampoo from the Otay Mesa Facility commissary, among other necessities.

96.     If given a meaningful choice, Ms. Carrera-Duarte would not work for $1.50 per day.

97.     CoreCivic falsely led Ms. Carrera-Duarte to believe the corporation cannot pay her more than $1.50 per day, despite the fact that it does so as a matter of course at several of its other immigration detention facilities.

98.     CoreCivic has retained and currently retains the value of Ms. Carrera-Duarte's labor by realizing this value as corporate profits, rather than using it to provide for safer, more humane living conditions for detainees at the Otay Mesa Facility.

**E.      Plaintiff Jennye Pagoada-Lopez**

99.     Ms. Pagoada-Lopez is a citizen of Honduras and an asylum seeker in the United States.

100.     Ms. Pagoada-Lopez is currently detained at the Otay Mesa Facility. She has been detained there since approximately June 24, 2017.

101.     Ms. Pagoada-Lopez performs work for CoreCivic at the Otay Mesa Facility, and is not paid the state minimum wage for the work she performs.

102.     Ms. Pagoada-Lopez was employed for approximately six weeks as a janitor. She cleaned and maintained bathrooms, showers, kitchens, lobbies, stairwells, offices, and other areas

15

through the Facility. She worked up to six hours per day, five days a week. She used cleaning supplies and equipment provided by CoreCivic.

103.   In return for this labor, Ms. Pagoada-Lopez was paid $1.50 per day, regardless of the number of hours she worked. CoreCivic credited these wages to her commissary account periodically.

104.   Currently, Ms. Pagoada-Lopez cleans and maintains communal areas in her pod. She works for up to two hours each day.

105.   In return for this labor, Ms. Pagoada-Lopez is paid nothing at all. Occasionally, CoreCivic has given Ms. Pagoada-Lopez extra rations of toilet paper and shampoo in exchange for her labor.

106.   Ms. Pagoada-Lopez spends her wages on food, medicine, clothing, soap, and shampoo from the Otay Mesa Facility commissary, among other necessities. She has lost approximately 30 pounds in detention at the Otay Mesa Facility.

107.   If given a meaningful choice, Ms. Pagoada-Lopez would not work for $1.50 per day or for free.

108.   CoreCivic falsely led Ms. Pagoada-Lopez to believe the corporation cannot pay her more than $1.50 per day, despite the fact that it does so as a matter of course at several of its other immigration detention facilities.

109.   CoreCivic has retained and currently retains the value of Ms. Pagoada-Lopez's labor by realizing this value as corporate profits, rather than using it to provide for safer, more humane living conditions for detainees at the Otay Mesa Facility.

**CLASS ACTION ALLEGATIONS**

110.   Plaintiffs bring this lawsuit as a class action on behalf of themselves, and all others similarly situated as members of the proposed class, under Federal Rules of Civil Procedure 23(a) and

(b)(2). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

**A.     Class Definitions**

111.     Plaintiffs seek to certify the following classes:

a.   **The Work Program Class:** All civil immigration detainees who performed work for CoreCivic at the Otay Mesa Detention Center in the Work Program within the past ten years.

b.   **The Unlawful Inducement Class**:  All civil immigration detainees held at the Otay Mesa Facility within the past ten years who performed work for no compensation outside of their pods.

c.   **The Injured Worker Class**: All civil immigration detainees held at the Otay Mesa Facility within the past ten years who were injured while performing work through CoreCivic's Work Program and denied access to California's Worker's Compensation benefits.

d.   **The Unpaid Cleaner Class:** All civil immigration detainees held at the Otay Mesa Facility who performed labor within their pods within the past ten years under threat of solitary confinement, and/or in exchange for basic necessities.

112.     Excluded from the definition are the Sylvester Owino, Jonathan Gomez, defendants, their officers, directors, management, employees, subsidiaries, and affiliates, and all federal governmental entities. Plaintiffs reserve the right to revise the Class Definitions based upon information learned through discovery.

**B.     Class Certification Requirements under Rule 23**

113.     **Numerosity:** Each class is so numerous that joinder of all members is impracticable. Plaintiffs do not know the exact size of the class since that information is within the control of CoreCivic. However, upon information and belief, Plaintiffs allege that the number of class members is numbered in the thousands. Membership in the class is readily ascertainable from CoreCivic's detention and employment records.

114.   **Commonality and Predominance:** There are numerous questions of law or fact common to the Class, and those issues predominate over any question affecting only individual class members. The common legal and factual issues include the following:

    a.   Whether Plaintiffs and Class Members were entitled to the protections of the California Minimum Wage Act;

    b.   Whether Plaintiffs and Class Members performed compensable work;

    c.   Whether Plaintiffs and Class Members were paid $1 or $1.50 per day for their labor;

    d.   Whether CoreCivic engaged in conduct that violated California law – including the California Minimum Wage Act, the California Unfair Competition Law, and the California Trafficking Victims Protection Act;

    e.   Whether CoreCivic engaged in conduct that violated the federal Trafficking Victims Protection Act;

    f.   Whether Plaintiffs and Class Members are entitled to equitable relief, including injunctive and declaratory relief; and

    g.   Whether Plaintiffs and the Class Members are entitled to damages and other monetary relief and, if so, in what amount.

115.   **Typicality:** The claims asserted by Plaintiffs are typical of the claims of the Class, in that the representative Plaintiffs, like all Class Members, were paid subminimum wages while employed by CoreCivic at the Otay Mesa Facility.  Each member of the proposed Class has been similarly injured financially by CoreCivic's misconduct.

116.   **Adequacy:** Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained attorneys experienced in class and complex litigation, including wage and hour class action litigation. Plaintiffs intend to vigorously prosecute this litigation. Neither Plaintiffs nor their counsel have interests that conflict with the interests of the other class members.

117.   **Superiority:**  Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of CoreCivic's wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of claims by many members of the proposed class who could not individually afford to litigate a claim such as is asserted in this complaint. This class action likely presents no difficulties in management that would preclude maintenance as a class action.

118.   This action satisfies the requirements of Rule 23(b)(2) because CoreCivic has acted and refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive and/or corresponding declaratory relief with respect to each Class Member.

## CAUSES OF ACTION

### <u>COUNT I</u>
### CALIFORNIA MINIMUM WAGE LAW
### Cal. Labor Code §§ 1194, 1197, 1197.1

119.   Plaintiffs reallege and incorporate by reference herein all allegations above.

120.   The California Legislature set the following minimum wages for 2011-2017:[10]

| January 1, 2017 | $10.50 for employers with 26 employees or more |
| --- | --- |
| January 1, 2014 | $9.00 |
| January 1, 2008 | $8.00 |

121.   The minimum wage is an obligation of the employer and cannot be waived by any agreement.

122.   Detainees at the Otay Mesa Facility do not forfeit their rights to wage protections.

---

[10] *See* http://www.dir.ca.gov/iwc/MinimumWageHistory.htm; https://www.dir.ca.gov/dlse/faq_minimumwage.htm

123.    Employees protected by California's minimum wage laws must be paid at least the set hourly minimum wage.

124.    Detainees at the Otay Mesa Facility who participate in the Work Program qualify as employees of CoreCivic under California law.

125.    CoreCivic qualifies as an employer under California law.

126.    Labor in the immigration detention context is not intended as a punitive measure.

127.    CoreCivic does not compensate detainees the state minimum wage for the work they performed at the Otay Mesa Facility. Instead, CoreCivic pays detainees $1 or $1.50 per day – or nothing at all – for work they perform at its facility.

128.    Plaintiffs seek to recover, on their own behalf and on behalf of all others similarly situated, unpaid minimum wages and costs of this suit.

129.    This Count applies to the Work Program Class, the Unlawful Inducement Class, the Injured Worker Class, and the Unpaid Cleaner Class.

**COUNT II**
**UNJUST ENRICHMENT**
**California Common Law**

130.    Plaintiffs reallege and incorporate by reference herein all allegations above.

131.    CoreCivic materially and significantly reduced its labor costs and expenses, and increased its profits, because Plaintiffs and Class Members perform undercompensated labor.

132.    Plaintiffs and Class Members conferred non-gratuitous benefits upon CoreCivic by performing work for $1 or $1.50 per day, or for nothing at all, for which CoreCivic would otherwise have had to pay at least the applicable minimum wage or more, thereby significantly and materially increasing CoreCivic's profits, unjustly enriching CoreCivic at the expense of and detriment to Plaintiffs and Class Members.

133.    CoreCivic's retention of any benefit collected directly and indirectly from this uncompensated labor violated principles of justice, equity, and good conscience.

134.    As a direct and proximate result of CoreCivic's forced labor practices, Plaintiffs and Class Members have suffered concrete harm and injury, including physical and emotional injury, monetary loss, and the unlawful violation of their rights.

135.    Plaintiffs and Class Members are entitled to recover from CoreCivic all amounts that CoreCivic has wrongfully and improperly obtained, and CoreCivic should be required to disgorge to Plaintiffs and Class Members the benefits it has unjustly obtained. Plaintiffs and Class Members are also entitled to recover exemplary damages. C.R.S. § 13- 21-102.

136.    This Count applies to the Work Program Class, the Unlawful Inducement Class, the Injured Worker Class, and the Unpaid Cleaner Class.

## COUNT III
## CALIFORNIA UNFAIR COMPETITION LAW
### Cal. Bus. & Prof. Code § 17200, *et seq.*

137.    Plaintiffs reallege and incorporate by reference herein all allegations above.

138.    California's Unfair Competition Law ("UCL") prohibits unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [California's False Advertising Law]." Cal. Bus. & Prof. Code § 17200.

139.    CoreCivic willfully violated, and continues to violate, the "unlawful" prong of the UCL by violating California labor law.

140.    The acts, omissions, and practices of CoreCivic constitute unfair and unlawful business acts and practices under the UCL in that CoreCivic's conduct offends public policy against forced labor, and seeks to profit by violating Plaintiffs' rights under state and federal law.

141.    As a direct and proximate result of CoreCivic's unlawful and unfair business practices, Plaintiffs and Class Members have suffered economic injury.

142.    This Count applies to the Work Program Class, the Unlawful Inducement Class, the Injured Worker Class, and the Unpaid Cleaner Class.

**COUNT IV**
**CALIFORNIA TRAFFICKING VICTIMS PROTECTION ACT**
**Cal. Civ. Code § 52.5**

143.    Plaintiffs reallege and incorporate by reference herein all allegations above.

144.    Pursuant to the California Trafficking Victims Protection Act, Cal. Civ. Code § 52.5, "a victim of human trafficking, as defined in Section 236.1 of the Penal Code, may bring a civil action for actual damages, compensatory damages, punitive damages, injunctive relief, any combination of those, or any other appropriate relief."

145.    Human trafficking is defined as the deprivation or violation of the personal liberty of another "with the intent to obtain forced labor or services." Cal. Penal Code § 236.1.

146.    Forced labor or services is defined as "labor or services that are performed or provided by a person and are obtained or maintained through force, fraud, duress, or coercion, or equivalent conduct that would reasonably overbear the will of the person." Cal. Penal Code § 236.1(h)(5).

147.    CoreCivic materially and significantly reduced its labor costs and expenses, and increased its profits, by unlawfully forcing and coercing Plaintiffs and Class Members to perform uncompensated labor. In order to drive profits, CoreCivic acted with the intent to obtain forced labor or services from its detainees.

148.    As alleged herein, CoreCivic did not and does not provide detainees at the Otay Mesa Facility with sufficient provisions and necessities for daily life. In order to purchase these necessary items, including food, medicine, hygiene products, and clothing, Plaintiffs and Class Members were and are forced or coerced to perform labor and services for CoreCivic for $1 or $1.50 per day.

149.    Plaintiffs and Class Members are entitled to recover from CoreCivic all amounts that CoreCivic has wrongfully and improperly obtained, and CoreCivic should be required to disgorge to Plaintiffs and Class Members the benefits it has unjustly obtained. Plaintiffs and Class Members are also entitled to recover exemplary damages. C.R.S. § 13- 21-102.

150.   This Count applies to the Work Program Class and the Unpaid Cleaner Class.

## COUNT V
## ATTEMPTED FORCED LABOR
### 18 U.S.C. §§ 1589(a) & 1594(a)

151.   Plaintiffs reallege and incorporate by reference herein all allegations above.

152.   Plaintiffs and Class Members are victims of attempted forced labor as defined by 18 U.S.C. § 1589(a).

153.   CoreCivic violates 18 U.S.C. § 1589(a)(2) by knowingly maintaining a corporate policy and uniform practice at the Otay Mesa Facility aimed at obtaining nearly free detainee labor and services by:

    a.   Withholding daily necessities from Plaintiffs and Class Members, thereby forcing them to work for subminimum wages in order to buy those daily necessities for themselves and avoid serious harm, including, but not limited to, malnutrition, unsanitary living quarters, extreme isolation, and unhygienic conditions of confinement; and

    b.   Threatening Plaintiffs and Class Members with physical restraint, serious harm, and abuse of law or legal process if they refuse to provide their labor, organize a work stoppage, or participate in a work stoppage.

154.   CoreCivic further violated 18 U.S.C. § 1589 by maintaining a corporate policy and uniform practice at the Otay Mesa Facility of threatening Plaintiffs and Class Members with serious harm, including solitary confinement, referral to an ICE officer, or criminal prosecution if they refused to work.

155.   CoreCivic attempted to perpetrate the offense of forced labor against Plaintiffs and Class Members.

156.   CoreCivic knowingly benefitted financially from participation in a venture CoreCivic knew or should have known engaged in unlawful coercion of labor in violation of 18 U.S.C. § 1589.

157.   Plaintiffs and Class Members have suffered damages in an amount to be determined at trial.

23

158.    Plaintiffs and Class Members are entitled to recover compensatory and punitive damages.

159.    Plaintiffs and Class Members are entitled to recover mandatory restitution in the full amount of their losses.

160.    Plaintiffs and Class Members are entitled to recover their reasonable attorney's fees.

161.    This Count applies to the Work Program Class and the Unpaid Cleaner Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Class, requests that the Court:

a.   Certify this action as a class action, with classes as defined above;

b.   Find that Plaintiffs are proper representatives of the Classes, and appoint the undersigned as Class Counsel;

c.   Order CoreCivic to pay for notifying Class Members of the pendency of this suit;

d.   Order disgorgement of CoreCivic's unjustly-acquired revenue, profits, and other benefits resulting from its unlawful conduct;

e.   Award declaratory and other equitable relief as is necessary to protect the interests of Plaintiffs and Class Members;

f.   Award injunctive relief as is necessary to protect the interests of Plaintiffs and Class Members, including enjoining CoreCivic from continuing to conduct business through the unlawful and unfair practices alleged herein;

g.   Award Plaintiffs and Class Members monetary damages for lost wages in an amount to be determined at trial;

h.   Award Plaintiffs and Class members their reasonable litigation expenses and attorney's fees; and

i.   Award any further relief that the Court deems just and equitable.

Dated: December 27, 2017                    Respectfully Submitted,


_/s/ Will Thompson_
Korey A. Nelson*
Lydia A. Wright*
**BURNS CHAREST LLP**

24

365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765
knelson@burnscharest.com
lwright@burnscharest.com

Warren T. Burns*
Daniel H. Charest*
Will Thompson (Cal. Bar No. 289012)
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
wburns@burnscharest.com
dcharest@burnscharest.com
wthompson@burnscharest.com

R. Andrew Free*
andrew@immigrantcivilrights.com
Matthew Freda*
Matt@immigrantcivilrights.com
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221
Facsimile: (615) 829-8959

Nicole Ramos*
nicole@alotrolado.org
**AL OTRO LADO**
511 E. San Ysidro Blvd., # 333
San Ysidro, CA 92173
Telephone: (619) 786-4866

Robert R. Ahdoot (Cal. Bar No. 172098)
rahdoot@ahdootwolfson.com
**AHDOOT & WOLFSON, APC**
8424 Santa Monica Blvd., Ste. 575
West Hollywood, CA 90069
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

*Application for admission *pro hac vice*
forthcoming.

**Attorneys for Plaintiffs.**